UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| **VARIOUS BAKING EQUIPTMENT OF** | ) |
| **IRANIAN ORIGIN** | ) |
| | ) |
| **Defendant in rem** | ) |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America files this action for forfeiture *in rem*, pursuant to Rule G, Supplemental Rules of Federal Rules of Civil Procedure, and alleges upon information and belief:

## I.
## NATURE OF THE ACTION

1. This action is brought by the United States of America seeking forfeiture to the United States, pursuant to 19 U.S.C. § 1595a(c) and 18 U.S.C. § 545, of various baking equipment of Iranian origin (collectively the "Defendant Equipment"), described below as:

    1. 2 automatic sloping-horizontal ovens
    2. 1 circulating oven
    3. 1 mixing bowl
    4. 4 bakery trumpet burners
    5. 1 rectangle/square dough sheeter
    6. 1 circle/oval dough sheeter
    7. 2 robots rectangular/circular
    8. 1 automated packing machine
    9. 1 packaging machine – conveyor line
    10. 1 dough mixer
    11. 1 mixer – 360 pounds
    12. 2 dough containers
    13. 3 multi-purpose polyurethane cutting blades

  14. 1 PVC roller cutting blade

  15. 8 rectangular pillows for bread making

  16. 10 round pillows for bread making

  17. 50 printed cellophane wraps with stencils

  18. 2 gas burners

  19. 4 ignition transformers

  20. 1 blower 100

  21. 1 direct flame gas burner

## II.
## JURISDICTION AND VENUE

2. Under Title 28 U.S.C. § 1345, the Court has jurisdiction over an action commenced by the United States, and has jurisdiction under Title 28 U.S.C. § 1355(a) over an action for forfeiture. This Court has *in rem* jurisdiction over the Defendant Equipment under Title 28 U.S.C. §§ 1355(b) and 1395. Venue is proper in this district pursuant to Title 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to Title 28 U.S.C. § 1355(b)(1)(B) and 1395(b) because the Defendant equipment is located in this District.

## III.
## DEFINITIONS

3. The following non-exhaustive list of definitions applies to this Verified Complaint for Forfeiture In Rem:

   a) "Consignee" refers to the receiver, buyer, or owner of goods.

   b) "Customshouse broker" or "broker" refers to the party legally authorized to conduct customs-related business on behalf of clients such as the manufacturers, importers, consignees, and shippers of foreign-made goods. The responsibilities of a customs broker include learning about clients' goods, facilitating shipment of the goods, and making sure all applicable "customs paperwork" or "entry documents" are accurate and complete. This includes classifying imported goods under classification

guidelines found in the United States Harmonized Tariff Schedule, and calculating import duties, or "customs duties," owed by the importer of record or consignee.

c) "Customs entry," or "entry," refers to a procedure in which goods arriving to a country can be legally processed in compliance with laws and regulations of the country. A customs entry is required for the goods to be released to the importer.

d) "Importer," or "importer of record," refers to the party liable for the payment of duties/tariffs owed on imported goods/merchandise or acts as an authorized agent on behalf of the consignee. Importers and consignees can be the same entity.

e) "Lading" is a term used to describe the action or process of loading cargo onto a ship or other vessel. A "bill of lading" is a shipping document which identifies the product being shipped, the consignee, and the transportation or distribution company.

f) "Shipper," or "exporter", refers to the entity responsible for lading goods being sent. The shipper ensures all shipping documents accompany the movement of goods for customs clearance. Shipping documents include bills of lading, commercial invoices, packing lists, and proper licenses for customs exceptions or restrictions to prevent problems during customs clearance both at origin and destination ports.

g) "Shipping documents," "customs paperwork," "entry documents," or "entry packet/package" are used synonymously when referring to documents related to customs business.

## IV.
## STATUTORY BASIS FOR FORFEITURE

4. This is a civil forfeiture action *in rem* brought against the Defendant Equipment, which is subject to forfeiture under:

a. 19 U.S.C. § 1595a(c), which provides for forfeiture of " [m]erchandise which is introduced or attempted to be introduced into the United States contrary to law" if: (1) "[it] is stolen, smuggled, or clandestinely imported or introduced"; or (2) "its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the merchandise is not accompanied by such license, permit, or authorization." 19 U.S.C. § 1595a(c)(1)(A), (c)(2)(B).

b. On or about August 19, 1997, the President of the United States issued Executive Order 13059, which clarified that virtually all trade and investment associated with the nation of Iran by United States persons is prohibited. Pursuant to 31 C.F.R. § 560.201, "the importation into the United States of any goods or services of Iranian origin or owned or controlled by the Government of Iran . . . is prohibited." However, importation can occur if a permit is obtained from the Director of the Office of Foreign Assets Control ("OFAC"). OFAC is an agency of the United States government and may issue permits if the importation falls into one of four exceptions (i.e. gifts valued at $100 or less, informational materials, household and personal effects, baggage for personal use incident to travel).

c. Pursuant to 19 U.S.C. § 1615, where property is claimed by any person, the burden of proof falls on the claimant to show the merchandise may be lawfully imported. Furthermore, under § 1615(2) "[m]arks, labels, brands, or stamps, indicative of foreign origin, upon or accompanying merchandise or containers of merchandise, shall be prima facie evidence of the foreign origin of such merchandise."

d. Pursuant to 19 U.S.C. § 1485(a), every importer of record must make and file a declaration under oath stating: (1) whether the merchandise is imported in pursuance of a purchase; (2) that the prices in the invoice are true; (3) all other statements in the invoice or other entry documents are true and correct; and (4) that

the importer will produce any invoice, paper, letter, document, or information received showing such prices or statements are not true.

e. United States Customs and Border Protection ("CBP") is responsible for administering the Tariff Act of 1930, as amended, 19 U.S.C. § 1202-1683g (hereinafter "the Tariff Act"). Among other things, the Tariff Act empowers CBP to assess and collect duties, taxes, and fees on merchandise imported into the United States, and empowers Homeland Security Investigations ("HSI") to investigate smuggling and fraud relating to imported goods.

f. The Tariff Act, and the regulations promulgated thereunder, mandate certain procedures for the importation of goods into the United States. Pursuant to 19 U.S.C. § 1484 (d)(1) and 19 C.F.R. § 142.3, the importer of record, or his authorized agent, such as a Customs Broker ("broker"), must file "entry" documents with CBP that provide specific information relating to the imported goods. The entry documentation required and collectively referred to as the "entry package", include invoices, bills of lading, packing lists, and Customs Forms 3461 (Entry/Immediate Delivery) and 7501(Entry Summary) and 7533(Cargo Manifest).

g. Pursuant to 18 U.S.C. § 545, it is a crime to: (1) "knowingly and willfully, with intent to defraud the United States, smuggle[], or clandestinely introduce[] or attempt[] to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced"; (2) knowingly and willfully, with intent to defraud the United States . . . "make[] out or pass[], or attempt[] to pass . . . any false . . . document or paper; or (3) "fraudulently or knowingly import[] or bring[] into the United States, any merchandise contrary to law, or receive[], conceal[], buy[], sell[], or in any manner facilitate[] the transportation,

      concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law."

   h. Under Section 545, merchandise introduced into the United States in violation of Section 545 may be forfeited.

   i. 18 U.S.C. § 542 makes it a crime to "enter[] or introduce[], or attempt[] to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or make[] any false statement in any declaration without reasonable cause to believe the truth of such statement, or procure[] the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties."

## V.
## FACTS IN SUPPORT OF FORFEITURE

5. On September 5, 2024, CBP's office in Dubai made a request for a domestic exam to be conducted on two shipping containers containing the Defendant Equipment as an entry of interest, Entry Number AC1-63431714, due to the possibility that the Defendant Equipment originated from Iran. The entry documents listed the Defendant Equipment as bakery equipment manufactured in Oman, listed that it was sold by Dubaian company, and stated it was being shipped to Aurora, Colorado, for importer and consignee Bibi Foods, LLC.

6. On September 25, 2024, the shipping containers were set aside for a physical exam at the Port of Houston. On September 26, 2024, the Defendant Equipment was physically

inspected. During inspection, there were various inconsistencies found regarding the Defendant Equipment, as compared to the entry documents.

7. It appeared that the origin of some pieces of the Defendant Equipment had intentionally been obscured. Specifically, on much of the Defendant Equipment, there was no indication of a manufacturer name, and identification placards showing model and serial number had been removed. Different identification placards had been applied using tape in the area where the original placards should have been located. Smaller pieces of the Defendant Equipment showed indications that manufacturer markings and identifiers had been obliterated. For example, the stamps on the rectangular and circular pillow for bread making had been covered up and the serial number and manufacturer label on the bakery trumpet burners were eradicated. Examples of altered identification placards and obscured manufacuter markings and identifiers are shown below:




 

8. CBP also located evidence that the Defendant Equipment had been manufactured by Iranian companies:

   a. Inside one of the automatic sloping-horizontal ovens, CBP discovered trash with the name and address of an Iranian company, Azaryap.

   b. Azaryap is a manufacturer of baking equipment and is based solely in Iran.

   c. That name Azaryap was printed on the oven and on the rectangular/square dough sheeter and circular/oval dough sheeter.

   d. The dough mixer was identical to one listed on the Azaryap website, and the rectangular/circular robots contained labels identical to other products containing the Azaryap manufacturer mark.

   e. The multi-purpose polyurethane cutting blades, PVC roller cutting blade, rectangular pillows for bread making, and round pillows for bread making are all subcomponents of the dough sheeters and rectangular/circular robots.

   f. Other various pieces of the Defendant Equipment, including the bakery trumpet burners and the direct flame gas burner, appeared identical to products manufactured by other Iranian companies, such as Otal.

g. The circulating oven appeared to be for the making of a specialized Iranian bread, and CBP was able to find a nearly identical oven made by the Iranian company Barak.

h. The cellophane wraps with stencils were manufactured to accompany the specialized Iranian bread once baked and were co-located with other items manufactured in Iran.

i. Many of the origin labels and manufacturer marks were written in Farsi, which is the primary language of Iran. Examples of these marks are shown below:





9. In addition to the products linked to specific Iranian companies, CBP discovered information showing that some of the Defendant Equipment had generally been manufactured in Iran:

   a. The automated packing machine and blower 100 were labeled "in accordance with Iran National Standard." Those labels are shown below:

    

   b. The blower 100 displayed the name of Atashmehr, which is a company located solely in Iran.

   c. The packaging machine-conveyer line is part of the automated packing machine unit.

   d. The gas burners and ignition transformers were manufactured by Otal, which is the same manufacturer as the bakery trumpet burners and the direct flame gas burner, and were labeled "made in Iran." Those labels are shown below:





e. The mixing bowl, mixer-360 pounds, and dough containers lacked manufacturer markings, were co-located with items manufactured in Iran, and were designed to be used alongside items confirmed to have been manufactured in Iran.

10. CBP reached out to the importer, through the broker, to obtain information necessary to identify the equipment through manufacturer name, model numbers, and serial numbers for the Defendant Equipment. The importer told CBP that they had purchased the Defendant Equipment from a third party in bundles and they did not know the manufacturers or have any serial numbers for the Defendant Equipment. The importer did provide CBP with pictures showing which accessories were meant to accompany each piece of the Defendant Equipment. Multiple of those pictures appeared to have come directly from Iranian websites identified by CBP.

11. CBP reached out to OFAC to determine whether a license had been issued for the importer and consignee. OFAC found no license for the importer, consignee, or any registered affiliates. OFAC determined that the importation of the Defendant Equipment into the United States, whether directly or via a third country, was prohibited due to its Iranian origin.

12. On February 27, 2025, CBP formally seized the Defendant Equipment at the Port of Houston in the Southern District of Texas. CBP notified Bibi Foods, LLC, through formal letters that CBP would commence administrative forfeiture proceedings against the Defendant Equipment. On April 8, 2025, Bibi Foods, LLC, filed a claim and requested that CBP refer the case to the United States Attorney's Office for judicial action.

## VI
## CONCLUSION

13. The Defendant Equipment is subject to forfeiture under 19 U.S.C. § 1595a and 18 U.S.C. § 545 as merchandise attempted to be introduced into the United States contrary to law due to its Iranian origin. Specifically: (1) the Defendant Equipment is merchandise that was attempted to be clandestinely imported into the United States through obscurement of true country of origin, *see* 19 U.S.C. § 1595a(c)(1)(A); (2) the Defendant Equipment is merchandise that required a license, permit, or other authorization of an agency of the United States Government and lacked such documentation, *see* 19 U.S.C. § 1595a(c)(2)(B); and (3) the Defendant Equipment is merchandise that was attempted to be imported into the United States by means of false documents and papers, *see* 18 U.S.C. §§ 545, 542. Therefore, the Defendant Equipment is subject to forfeiture as merchandise which was attempted to be introduced into the United States contrary to law.

## NOTICE TO ANY POTENTIAL CLAIMANTS

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Equipment, which is subject to forfeiture, and wish to contest the forfeiture, you must file a verified claim fulfilling the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance with Rule G(4)(b).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas at the United States Courthouse, 515 Rusk, Houston, Texas 77002, and a copy must be served upon the undersigned Assistant United States Attorney at the United States Attorney's Office, 800 N. Shoreline Blvd., Suite 500, Corpus Christi, TX 78401.

## PRAYER

Wherefore, the United States prays that judgment of forfeiture be entered against Defendant Equipment in favor of the United States of America, in addition to such costs and other relief t which the United States may be entitled.

Respectfully submitted,

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

By:   *s/ Tyler Foster*
TYLER FOSTER
Assistant United States Attorney
Southern District of Texas No: 3802443
Oklahoma:  34839
800 N. Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
Tel. (361) 888-3111   Fax (361) 888-3200
Email: tyler.foster2@usdoj.gov

## **VERIFICATION**

I, Terry C. Boucher, a Special Agent with Homeland Security Investigations hereby verify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the facts set forth in Paragraphs 5 through 12 of the Factual Basis in the forgoing Verified Complaint for Forfeiture in Rem are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __11th__ day of __June__ 2025.

_____
Terry C. Boucher
Special Agent
Homeland Security Investigations